Grafton,
No. 5676.

N. George Papademas

*v.*

State.

Argued December 6, 1967.
Decided January 30, 1968.

*N. George Papademas,* pro se ( by brief and orally ).

*George S. Pappagianis,* Attorney General and *R. Peter Shapiro,* Assistant Attorney General ( *Mr. Shapiro* orally ), for the defendant.

Griffith, J. Action in the nature of a petition for a writ of mandamus to prevent the Commissioner of Public Works and

Highways for the State of New Hampshire from constructing certain facilities in the area of Crystal Lake in Enfield, New Hampshire. The matter was submitted to the Trial Court ( *Keller, J.* ) on an agreed statement of facts and certain issues of law raised thereby were transferred without ruling.

The plaintiff in this case owns property abutting on Crystal Lake in Enfield, New Hampshire but not part of any proposed taking by the State of New Hampshire. The defendant proposes to construct a new access to the lake over an existing right of way and other lands of an adjacent owner pursuant to the provisions of RSA ch. 235. The proposed taking principally increases the area of the old right of way so that the last 160 feet, more or less, of the highway on the lake side will be 90 feet in width instead of 40 feet. In the last 160 feet the State proposes to construct an area for parking and turning around of vehicles and facilities to launch boats.

A petition dated June 16, 1966 was presented to the Governor and Council seeking the proposed extension of the road and on July 18, 1966 the Governor and Council appointed a Commission to lay out the facilities under RSA ch. 235. A public hearing was held by the Commission on August 30, 1966 to determine the necessity for and location of the facility. The Commission reported its findings to the Governor and Council who authorized the construction of the road on March 31, 1967.

The original petition to the Governor and Council was signed by Richard W. Bryant of Enfield, an employee of the New Hampshire Fish and Game Department. The layout Commission appointed by the Governor and Council included as one of its three members E. Bertram Astles an employee of the New Hampshire Department of Public Works and Highways.

The first issue of law transferred was: 1. Is there a conflict of interest present which voids the action of the Layout Commission and the Governor and Council by virtue of the initial petition being originated in part by a State employee and the fact that a State employee served on the Layout Commission?

We know of no requirement that a signer of an initiating petition be disinterested in any case. In fact the very act of petitioning for the executive to take action negates neutrality. A short answer therefore to the plaintiff's objection to one of the petitioners being an employee of the Fish & Game Department is that petitioners are presumed partisan and have a right to be partisan.

Service on the Layout Commission by an employee of the Highway Department presents a different proposition. A Layout Commission in the layout of a highway and in the assessment of the damages is acting in a judicial capacity. *Horne* v. *Rochester*, 62 N. H. 347; *Dana* v. *Craddock*, 66 N. H. 593.

In argument counsel states that the objection to the actions of the Layout Commission were limited to the layout of the highway and that they were not here objecting to the assessment of damages. While there would be an appeal and a trial de novo in the Superior Court on the assessment of damages none lies on the layout except to correct gross mistake or fraud. RSA 235:2, 4; RSA 233:10. Therefore, the question may properly be examined here. *Tracy* v. *Surry*, 101 N. H. 438. The appointment by Governor and Council of an employee of the Highway Department to the Layout Commission was not forbidden by the statute ( RSA 235:2 ) and was clearly for the purpose of adding professional assistance to an otherwise lay commission.

The argument of the plaintiff claims an incompatibility of office and conflict of interest not for the purpose of removal of the officer as in *Cotton* v. *Phillips*, 56 N. H. 220 and *Andover* v. *Carr*, 55 N. H. 452, but as a direct attack on the decision of the Commission. The law of agency relied upon by the plaintiff ( Restatement ( Second ), Agency, *ss.* 39, 385, 387 ) does not control the issue unless the conflict of interest between employments would render the tribunal unfair and their decision void. This court has consistently refused to rule that remote connections of a juror with one of the litigants, vitiates a verdict. *McLaughlin* v. *Union-Leader*, 99 N. H. 492, 499; *Chagnon* v. *Union-Leader Co.*, 103 N. H. 426, 441; *Pierce* v. *Mowry*, 105 N. H. 428, 430. Conflict of interest has been held to prevent a member of a city council from participating in a judicial capacity in a matter that he is a party to ( *Rollins* v. *Connor*, 74 N. H. 456 ) but not to prevent the chairman of the State Board of Education from participating in a decision which would remotely affect him in other capacities. *Opinion of the Justices*, 104 N. H. 261. See also, *N. H. Milk Dealers' Ass'n.* v. *Milk Control Board*, 107 N. H. 335.

There is nothing in this case to indicate that the Highway Department had any interest in whether or not the road was constructed or that if it were how it should be laid out. In the absence of evidence to the contrary it cannot be assumed that the Highway Department had any interest contrary to the public

interest and in the layout of the highway public interests would control. We think that as was said in *Opinion of the Justices,* 104 N. H. 261, 264, the claim of conflict of interest is "too attenuated and unsubstantial" to void the decision.

The second and third issues transferred are interdependent and will be treated together. 2. Is the State of New Hampshire, pursuant to the provisions of RSA ch. 235, as a matter of law, permitted to employ eminent domain powers to acquire land upon which construction of the facilities referred to in the agreed statement of facts may be made? 3. Are the acts of the State of New Hampshire and the Layout Commission void due to the fact that there is an existing right-of-way available to the public water, to wit, Crystal Lake?

Issue number 2 refers to the proposed turn around, parking area and boat launching facilities to be provided in that portion of the highway immediately adjacent to the lake.

RSA ch. 235 was originally enacted in 1887 and provided as follows:

"Section 1. The governor, with the advice and consent of the council, upon petition and a hearing thereon, may appoint a commission of three persons to lay out a highway from any existing highway to any public water in this state." Laws 1887, 97:1.

This statute was amended by Laws of 1893, *c.* 69, by adding the following words at end: "and so far around or along the same as may be required." The additional words added by the amendment of 1893 were an expansion of the authority granted by the original act and clearly indicates an intention that the highway immediately adjacent to the water could be expanded for ease of access to the water.

In *Hartford* v. *Gilmanton,* 101 N. H. 424, this court set forth the limitations on use that could properly be made of a highway to public waters. The test there established was whether the use provided for was "reasonably incident to a 'viatic use of the way.'" In the instant case the turn around, boat launching facilities and parking area makes provision for the normal change in mode of transportation required in a transfer from dry land to water. It differs from *Hartford* v. *Gilmanton, supra,* 427, where the parking was for "sun bathing, picnicking, loitering . . . ball playing . . . or any other purposes associated with parks and playgrounds."

The use of boats transported on trailers to public waters is a

"natural development of means of transportation," ( *Opinion of the Justices,* 94 N. H. 501, 505 ) and the facilities provided a furtherance of "a viatic use of the way." *Lydston* v. *Company,* 75 N. H. 23. It follows, therefore, that the answer to the second issue is in the affirmative.

The third issue raised the issue of the authority of the State to enlarge and improve on an existing right of way to public waters. It has long been the rule that the layout of a new highway may be in part over an old highway. *Stinson* v. *Dunbarton,* 46 N. H. 385. No authority has been cited in support of the denial of the State's right under this statute to lay out adequate roads or to improve existing ones and we consider the action taken in this case to come within that power.

*Petition dismissed.*

All concurred.